ELIZA B. KING DOOLEY, demandante y apelada, *v.* JULIO ENRIQUE PANTOJA, demandado y apelante.

Núm. 8467.—*Sometido:* Febrero 16, 1943. *Resuelto:* Marzo 25, 1943.

*Celestino Iriarte, F. Fernández Cuyar* y *H. González Blanes,* aboga-
dos del apelante; *Dubón & Ochoteco,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tri-
bunal.

La demandante en este caso radicó una demanda para
reivindicar una casa que se describe en la misma. El de-
mandado contestó, alegando que era el dueño de la casa por
compra a Florentino Ríos, quien a su vez la había comprado
a José Baldrich. Baldrich, de acuerdo con el demandado,
compró la casa a Félix Guzmán, quien la había adquirido por
documento privado otorgado por un tal Collazo, mandatario
de la demandante. Después de un juicio en los méritos, la
corte de distrito, resolviendo que Collazo había vendido la
casa "sin estar autorizado para ello", falló a favor de la
demandante. El demandado ha apelado de esa sentencia.
Los abogados de la demandante y apelada no radicaron ale-
gato, ni comparecieron a la vista oral.

El segundo párrafo del artículo 1604 de nuestro Código
Civil dispone, refiriéndose al mandato, que "Para transigir,
enajenar, hipotecar o efectuar cualquier otro acto de rigu-
roso dominio, se necesita mandato expreso." En este caso
no hubo prueba de tal mandato expreso. La corte de distrito
estaba por tanto, aparentemente, bajo la impresión de que
la ausencia de tal mandato expreso requería inexorablemente
que dictase sentencia a favor de la demandante.

Pero la corte de distrito omitió considerar la cuestión
sustancial aquí envuelta; esto es, si la demandante había ra-
tificado la venta de su casa por Collazo, a pesar del hecho
de que éste último no había sido debidamente autorizado para
efectuar dicha venta.

Tanto la demandante como el actual administrador de
sus bienes declararon que cuando Collazo trabajaba para ella
había estado encargado de su oficina, pero que estaba auto-

rizado solamente a cobrar dinero y a actuar como corredor; que sólo la demandante tomaba las decisiones finales en todas las ventas propuestas; y que Collazo no tenía poder para traspasar su propiedad mediante documento privado. Por otro lado, el testimonio no contradicho de José Hernández, cobrador de la demandante, fué muy significativo. Aunque llamado por el demandado, declaró, en el contrainterrogatorio por la demandante, que él cobraba $3 como canon de arrendamiento por el *solar*. Entonces continuó declarando como sigue:

"P.—¿Quién fué que le dijo a usted que dejara de cobrar la casa que está sobre ese solar?

R.—Mrs. Dooley.

P.—¿Cuándo se lo dijo ella a usted?

R.—Cuando ella se enteró que Collazo había vendido esa casa sin permiso de ella.

P.—¿De quién era la casa entonces?

R.—De Félix Guzmán y éste la vendió a Florentino Ríos y después del señor Pantoja."

Declaró además que la venta original hecha por Collazo a Guzmán en representación de la demandante tuvo lugar como cinco o seis años antes.

Es cierto que al contestar otras preguntas este testigo hizo manifestaciones contradictorias en cuanto a la fecha exacta en que la demandante le ordenó que cesase de cobrar renta por la casa en controversia. Pero declaró claramente y sin contradicción alguna que, como cobrador de la demandante, él dejó de cobrar canon de arrendamiento por la casa en la fecha de la supuesta venta original a Guzmán por Collazo, y que desde entonces se había limitado a cobrar y remitir al administrador de la demandante solamente el alquiler del solar en que radica la casa, y que no ha cobrado alquiler alguno por la casa a virtud de instrucciones específicas de la demandante misma a ese efecto, recibidas años antes de la actual controversia.

██ La corte de distrito rehusó admitir evidencia tendente a demostrar que la forma en que se había efectuado la supuesta venta aquí envuelta—incluyendo el otorgamiento de documentos privados por Collazo que eran luego sustituídos por escrituras públicas suscritas por la demandante una vez pagados todos los plazos—era la forma acostumbrada en que se vendían las propiedades de la demandante. La existencia de tal costumbre, desde luego, no sustituiría el mandato expreso exigido por el artículo 1604 del Código Civil. Sin embargo, prueba tendente a demostrar que en el pasado se había llevado a cabo una serie de actuaciones semejantes por el agente y su ratificación por el principal, arrojaría luz sobre el problema de si, de acuerdo con la alegada costumbre, hubo ratificación en el presente caso. Por tanto, esa evidencia era pertinente y relevante, y la corte de distrito erró al no admitirla. *Cf. Restatement, Agency,* sección 43.

No obstante, aunque este error fué lo suficientemente perjudicial para justificar una revocación, si la evidencia que fué admitida demostró concluyentemente que el principal había ratificado la venta, debemos fallar a favor del demandado en vez de devolver el caso para un nuevo juicio en que se admitiría la evidencia impropiamente excluída.

██ El segundo párrafo del artículo 1618 de nuestro Código Civil dispone que "En lo que el mandatario se haya excedido, no queda obligado el mandante sino cuando lo ratifica expresa o tácitamente." Quizá, el mejor método de determinar que un principal ha ratificado los actos de un agente no autorizado es estableciendo que el principal ha recibido los beneficios o frutos de la transacción en cuestión (*Restatement, Agency,* Sección 98). Collazo no declaró en este caso. El único testimonio sobre esta fase del caso fué el de la demandante, quien declaró que ella nunca recibió de su alegado agente el precio de compra de la casa.

Pero el recibo de los frutos de la transacción en cuestión no es el único medio de ratificación por un principal de las actuaciones no autorizadas de su agente. Si un principal

decide conducirse en forma tal que sus actos y todas las circunstancias concurrentes indican una "ratificación . . . de un acto anterior que no lo obligaba pero que fué ejecutado o se pretendió ejecutar a su nombre . . . al acto . . . se le da efecto como si hubiera sido originalmente autorizado por él" (*Restatement, Agency,* sección 82). *Cf. Lokpez Finlay* v. *Lokpez et al.,* ante, pág. 618, decidido en 25 de marzo de 1943. Siempre que tal conducta inequívocamente constituya una ratificación, ese principal no puede en una fecha muy posterior repudiar su propia conducta al descubrir tardíamente que su agente nunca le entregó los frutos de la transacción. ·*Cf.* Artículo 1263, Código Civil, ed. 1930; *Central Boca Chica, Inc.* v. *Tesorero,* 54 D.P.R. 424, 434. Véase *Hardware Mut. Casualty Co.* v. *Lieberman,* 39 F. Supp. 243 (New Jersey, 1941).

Creemos que la regla enunciada se ajusta a los hechos de este caso. La demandante, como hemos visto, una vez que se enteró de la venta de la casa hecha en su nombre por Collazo, instruyó a su cobrador para que cesara de cobrar la renta de la casa. Esta norma de conducta continuó mientras el título y uso de la casa, que también fué objeto de varias mejoras por algunos de sus dueños, cambió de manos varias veces. Por tanto resolvemos que, aún cuando Collazo no estaba autorizado originalmente por la demandante para vender la casa en cuestión, la conducta de la demandante equivalió a la ratificación de su actuación. Ella está impedida, bajo las circunstancias de este caso, de alegar tan tarde la falta de autorización de su agente.

*La sentencia de la corte de distrito será revocada y se dictará otra declarando sin lugar la demanda, con costas.*