Loíza Sugar Company, demandante y apelada, *v.* Jorge Zequeira Benítez, demandado y apelante.

Núm. 8787.—*Sometido:* Marzo 17, 1944. *Resuelto:* Julio 3, 1944.

*Celestino Iriarte, F. Fernández Cuyar, H. González Blanes* y *E. Márquez Huertas,* abogados del apelante; *Sifre, Franceschi & Sifre,* abogados de la apelada.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

Dos son las cuestiones fundamentales envueltas en este litigio. Primero, si a virtud de un poder otorgado por el demandado, Jorge Zequeira, a favor de su hermano Javier Zequeira, estaba éste facultado, en transacción de unos pleitos, para otorgar un contrato reconociendo una servidumbre a favor de la demandante y, segundo, si el demandado, por sus actuaciones ratificó dicho contrato. Los hechos son los siguientes:

Javier y Jorge Zequeira Benítez adquirieron en común pro indiviso por herencia de su padre Javier Zequeira, la

finca Santa Inés, de 512 cuerdas más o menos, sita en el barrio del Pueblo, sitio El Cacique, de Loíza. Colindante con esta finca está una de la demandante Loíza Sugar Co. Allá por el año 1914 y siendo ya dueño de su condominio en la referida finca el demandado, Jorge Zequeira Benítez se marchó hacia los Estados Unidos con el propósito de estudiar medicina en una universidad de la ciudad de Chicago. Desde mucho antes de 1914 la demandante había construído a sus expensas, en diversas fechas, varias vías de ferrocarril que penetraban y cruzaban por distintos sitios la referida finca Santa Inés. En el año 1916, y estando el demandado en Chicago radicó en la Corte de Distrito de San Juan, por mediación de su abogado Eugenio Benítez, dos acciones contra la ahora demandante y en las cuales se incluyó como parte demandada a su hermano Javier Zequeira Benítez por haberse negado a ser parte demandante. Una de estas acciones era para obtener el levantamiento de las vías férreas anteriormente mencionadas y la otra para que se le resarciera de los daños y perjuicios ocasionados por el mantenimiento de tales vías. Copiamos los hechos restantes de la extensa y bien razonada opinión del juez inferior:

"... Era el fundamento de ambas demandas que la Loíza Sugar Company había tendido dichas vías y había venido operando sus trenes sobre ellas sin tener derecho para ello pues no existía contrato alguno de servidumbre entre Jorge Zequeira y Loíza Sugar Company. El primer pleito titulado 'negatoria de servidumbre' terminó por sentencia a favor de la demandada y fué apelado por Jorge Zequeira al Tribunal Supremo. Contra la segunda acción se había establecido una excepción previa a la demanda que estaba pendiente de resolución. Fué entonces que el demandado Jorge Zequeira otorgó en Chicago y a favor de su hermano Javier el poder que se copia en la demanda y que en lo partinente dice así:

" '... by these presents make, constitute and appoint my brother, Javier Zequeira, of Loíza, Puerto Rico, my true and lawful attorney for me and in my name, place and stead and for my use and benefit to grant, bargain and to make all kinds of contracts, and specially to make contracts of lease for ten years or more of the finca Santa

Inés, . . . to whom and upon such terms as my said brother Javier Zequeira may deem best of all my right, title, and interest, estate and generally to say, do, act, transfer, determine, accomplish and finish all matters and things whatsoever relating, to the said finca Santa Inés, as fully amply and effectually to all intents and purposes as I might or could do if personally present, with full power of substitution or revocation, whereby (sic) ratifying, confirming and holding valid all that my said brother or his substitute shall lawfully do or cause to be done by virtue of these presents.'

"Recibido este poder por Javier Zequeira compareció éste ante el notario Eduardo Acuña Aybar con Enrique González Rodríguez, Presidente sustituto de la demandante, y con fecha 24 de diciembre de 1919 otorgaron una escritura, donde después de copiar íntegro el poder a que antes nos hemos referido y de hacerse constar que tanto Javier como su poderdante Jorge eran dueños de la finca Santa Inés y describir en detalle las distintas vías férreas que cruzaban dicha finca y decir González Rodríguez que la demandante era dueña de la Central Canóvanas y de la finca donde estaba enclavada y de mencionar los pleitos entablados por Jorge Zequeira contra la Loíza Sugar Company se manifestó 'que no obstante el fallo recaído en el primer pleito reseñado, deseosas las partes litigentes de terminar sus diferencias sin esperar el resultado final de ambos litigios y de los más que con ocasión de aquéllos pueden promoverse, han celebrado una transacción, sobre las bases que más adelante se consignan, a la que concurre y asiente el otro compareciente señor Javier Zequeira Benítez, como elemento necesario de la misma, en su condición de condueño de una mitad de la finca que ha de ser afectada por los términos de dicha transacción, cuyas bases son como sigue, a saber:', estipulándose entonces que los hermanos Zequeira aceptaban y reconocían 'que la Loíza Sugar Co. y sus antecesores en título han construído a su exclusivo costo, desde fechas indeterminadas sobre la dicha finca Santa Inés, las vías férreas, ramales y desvío que se reseñan en el precedente cuarto de este instrumento, y las ha utilizado manteniendo en operación con y sobre ellas su ferrocarril privado para transporte de cañas y otros efectos a su factoría Canóvanas, y como materia de derecho, reconocen igualmente y declaran que tales construcciones de líneas, y tal mantenimiento en operación del susodicho ferrocarril, se han efectuado por dicha Loíza Sugar Co. y sus causahabientes bajo título legal y obligatorio para los dueños de la finca Santa Inés, en orden a cuyo título y como efecto de su reconocimiento convienen en darlo por totalmente curado de cual-

quier vicio o defecto de que adolecer pudiera su constitución. SEGUNDA.—Los propios señores Zequeira Benítez en su condición expresa de únicos dueños de la predicha finca, constituirán sobre ella y a favor de la Loíza Sugar Co. y sus sucesores en título, una servidumbre de vía férrea, de acuerdo con las líneas, ramales y desvío ahora existentes, cuya servidumbre se mantendrá por todo el tiempo que a la Loíza Sugar Co. convenga, sujeta a las condiciones de pagar por ella a los dueños del predio sirviente una suma anual anticipada de seiscientos *dollars,* y de mantener un portón en cada uno de los linderos este y oeste de la finca, en los sitios de entrada y salida de la vía general. TERCERA. Como precio o consideración de los reconocimientos y convalidaciones de título que encierra 'a base primera, y también del uso y ocupación de terrenos por la vía durante todo el tiempo anterior a esta fecha e indemnización : cuantos daños y perjuicios y menoscabos se hayan causado a la finca Santa Inés, o a sus dueños, y poseedores, por razón de tales vías, la Loíza Sugar Co. pagará a los hermanos Zequeira cinco mil doscientos dollars distribuídos así: dos mil ochocientos dollars cubriendo todo el tiempo comprendido desde la fecha indeterminada de instalación de tales vías hasta el día treinta y uno de diciembre de mil novecientos quince, y dos mil cuatrocientos dollars cubriendo a razón de seiscientos dollars anuales los cuatro años que median desde primero de enero de mil novecientos dieciséis a treinta y uno de diciembre corriente. CUARTA. El señor Jorge Zequeira Benítez desistirá a su exclusivo costo de los dos pleitos ahora pendientes a que se hace referencia en los precedentes sexto y séptimo de este instrumento. Consiguientemente en ejecución de dicha transacción los comparecientes señores Zequeira constituyeron una servidumbre perpetua en favor de la finca donde se halla enclavada la Central Canóvanas y autorizaron a dicha corporación azucarera a ocupar cierta faja de terreno de la finca Santa Inés para mantener sobre ella una línea fija de ferrocarril comprometiéndose la Loíza a satisfacer las indemnizaciones convenidas. Javier Zequeira hizo constar en la escritura que con anterioridad había recibido la suma de $5,200 allí convenida y que el contrato se había otorgado *'dentro de la amplia y general facultad de resolver y terminar todas las materias y asuntos referentes a la finca Santa Inés, que contiene la última cláusula del poder de su mandante don Jorge Zequeira y con arreglo a las instrucciones específicas que por éste le han sido comunicadas.'"* (Bastardillas nuestras.)

En la contestación en el caso de autos el demandado admitió que había recibido cierta cantidad de dinero de la demandante en concepto ''de indemnización'' por el uso de su finca por la demandante y que a virtud de dicho pago el demandado abandonó los pleitos que había entablado contra la demandante.

La corte inferior resolvió que de acuerdo con el segundo párrafo del artículo 1604 del Código Civil (ed. 1930) al efecto de que ''Para transigir, enajenar, hipotecar o ejecutar cualquier otro acto de riguroso dominio, se necesita mandato expreso,'' el poder arriba transcrito, por sí solo, era insuficiente para autorizar al apoderado Javier Zequeira Benítez para constituir a favor de la demandante una servidumbre perpetua. Sin embargo, llegó a la conclusión de que dicho poder expresamente autorizaba al apoderado para transigir pleitos en relación con la finca Santa Inés y que, por lo tanto, el contrato de servidumbre era válido ya que había sido otorgado en transacción de los pleitos arriba mencionados. Asimismo llegó a la conclusión de que aun en el supuesto de que dicho contrato no fuera válido al ser otorgado, el mismo había sido convalidado y ratificado a virtud de actuaciones posteriores del demandado. El apelante en este recurso señala como errores las dos conclusiones de derecho arriba expuestas.

 No erró la corte inferior al resolver que el poder otorgado por el demandado no era suficiente para autorizar a su hermano a constituir una servidumbre perpetua a favor de la demandante. Los mandatos son de interpretación estricta, y siendo la creación de una servidumbre perpetua un acto de riguroso dominio (XI Manresa, pág. 450, ed. 1905), bajo los preceptos del artículo 1604 del Código Civil, supra, era requisito indispensable el otorgamiento de mandato expreso para que el mandatario hubiera podido establecer dicha servidumbre. *Cf. Font* v. *Registrador,* 57 D.P.R. 648; *Lokpez* v. *Lokpez,* 61 D.P.R. 618. No consideramos necesario resolver si por el hecho de que el poder concedía al man-

datario la facultad de transar pleitos en relación con la finca Santa Inés pudo él constituir la servidumbre ya que somos de opinión que la corte sentenciadora tampoco erró al resolver que el contrato otorgado por el mandatario fué ratificado por el demandado. Las conclusiones de hecho a que llegó dicha corte están ampliamente sostenidas por la prueba.

La corte inferior consideró probado el hecho de que la Loíza Sugar Company cumplió en todas sus partes el contrato de transacción y constitución de servidumbre y que pagó las cantidades convenidas a Javier Zequiera; que en el año 1928 Jorge Zequeira regresó a Puerto Rico y, según su propio testimonio, en dicho año o en el 1929, tuvo una entrevista con el administrador de la central demandante en sus oficinas, y allí se le mostró el contrato de servidumbre que se copia en la demanda; que entonces protestó, aduciendo que nunca había dado poder para ello, aunque admitió que había venido recibiendo los $300 anuales que le correspondían bajo el contrato, pero alegó que lo había venido haciendo por concepto "de servicio de vías" a través de su finca mientras durase el arrendamiento que la demandante tenía de la finca. Después de esa conversación con el administrador, dijo el demandado que continuó recibiendo los $300 "pero solamente con el entendido de que mientras durara el arrendamiento por el cual se regía la finca". Empero, es de notarse como hecho significativo que contradice al demandado, que hasta el 7 de julio de 1932, la finca Santa Inés no había sido disfrutada en arrendamiento por la ahora demandante pues no fué hasta esta última fecha que la central adquirió como subarrendataria el arrendamiento que tenía José Iturregui; por tanto, con anterioridad al 1932, nada tenía que pagar dicha central al demandado por concepto de cánones de arrendamiento, y lo que pagaba lo hacía por concepto del uso de la servidumbre de acuerdo con el contrato de transacción. La demandante siempre tuvo buen cuidado de insertar en los cheques de los pagos que hacía, primero a Javier y luego al demandado, que los hacía por concepto de la servidumbre de vía que

pasaba por la finca Santa Inés. En tres de los cheques expedidos a favor del demandado, fechados en diciembre 30, 1931, diciembre 30, 1932 y diciembre 29, 1933, y los cuales fueron presentados en evidencia, se hizo constar claramente que se extendían como pago de la referida servidumbre de paso y fueron cobrados por el demandado; uno de estos cheques, o sea el de diciembre 30 de 1931 fué extendido y cobrado por el demandado cuando la central demandante no tenía en arrendamiento la finca Santa Inés y no tenía, por tanto, que hacer pago alguno por ese motivo al demandado.

Recientemente dijimos en *Dooley* v. *Pantoja*, 61 D.P.R. 642, 645, lo siguiente:

"El segundo párrafo del artículo 1618 de nuestro Código Civil dispone que 'En lo que el mandatario se haya excedido, no queda obligado el mandante sino cuando lo ratifica expresa o tácitamente.' Quizá, el mejor método de determinar que un principal ha ratificado los actos de un agente no autorizado es estableciendo que el principal ha recibido los beneficios o frutos de la transacción en cuestión (Restatement Agency, Sección 98). . . .

"Pero el recibo de los frutos de la transacción en cuestión no es el único medio de ratificación por un principal de las actuaciones no autorizadas de su agente. Si un principal decide conducirse en forma tal que sus actos y todas las circunstancias concurrentes indican una 'ratificación . . . de un acto anterior que no lo obligaba pero que fué ejecutado o se pretendió ejecutar a su nombre . . . al acto . . . se le da efecto como si hubiera sido originalmente autorizado por él' (Restatement, Agency, sección 82). *Cf. Lokpez Finlay* v. *Lokpez et al.*, ante, pág. 618, decidido en 25 de marzo de 1943. Siempre que tal conducta inequívocamente constituya una ratificación, ese principal no puede en una fecha muy posterior repudiar su propia conducta al descubrir tardíamente que su agente nunca le entregó los frutos de la transación. (Citas).

Se queja el apelante de que el juez inferior estimara probado que Jorge Zequeira "admitió que había recibido los $300 anuales" y alega en contrario que desde 1919 hasta 1931 fué Javier Zequeira quien recibió dichos $300 y que de 1931 en adelante, año en que empezó a recibir dichos $300, según su

propia declaración, los recibió por concepto del servicio de vías a través de su finca mientras durara el arrendamiento. Así pues, vemos que en la página 13 de su alegato el apelante categóricamente niega que Jorge Zequeira recibiera cantidad alguna antes de 1931, ya que dice "a Jorge Zequeira la Central no le ha pagado un centavo desde 1919 hasta 1931". Empero, a las páginas 14 y 15 de su alegato, al tratar de explicar el muy significativo hecho expuesto por el juez inferior de que no fué hasta el 1932 que la central adquirió en arrendamiento la finca Santa Inés (recuérdese que el apelante declaró que desde *1931* en adelante empezó a recibir los $300 por concepto del arrendamiento) nos dice el apelante lo siguiente: "es inescapablemente cierto que desde antes de 1932 la central estaba pasando sus vías por terrenos de la propiedad de Jorge Zequeira y que por tal uso de los terrenos la central venía obligada a *pagar alguna cantidad de dinero a Jorge Zequeira,* de suerte que nada tenía que pagar dicha central 'por concepto de cánones de arrendamiento' pero sí algo tenía que pagar por concepto de paso de vía y uso de terrenos ajenos" (Bastardillas nuestras). Esta aseveración claramente es una admisión de que Jorge Zequeira desde mucho antes de 1932 recibía los $300 que pagaba la Central. ¿Cómo los recibía? El apelante mismo ya nos lo ha dicho; desde 1919 hasta 1931 la central se los pagó a su hermano Javier. Luego su hermano Javier tiene que habérselos entregado a él para que fuera posible que él los recibiera, y ahondando un poco más en la cuestión resulta con entera claridad, a la luz de lo dicho en *Dooley* v. *Pantoja,* supra, que Jorge Zequeira tiene que haber ratificado el contrato de servidumbre. Veamos por qué. En 1928, al llegar a Puerto Rico, según alega el propio apelante, él tuvo completo conocimiento del contrato de servidumbre, así como de todos los derechos y obligaciones que presuntivamente bajo él se establecían, y tan es así que sostuvo una conferencia con Mr. A. Cochran, Administrador de la Central, a ese respecto. A este hecho debemos añadir que Jorge Zequeira, si bien regresó a Puerto

Rico en 1928, no se hizo cargo de la finca, ni de sus intereses en ella hasta el año 1931, cuando falleció su hermano Javier. Al efecto, a la página 76 de la T. de E. declara lo siguiente:

"P. ¿Desde cuándo comenzó a recibir usted dinero correspondiente a ese servicio de vía, que usted recuerde?

"R. Pues que yo recuerde desde que murió mi hermano, en el 1931, que yo pasé el primer recibo.

"P. ¿Antes de eso, usted no percibió nunca dinero de eso?

"R. Nunca, lo daba por recibido porque mi administrador lo recibía."

De todo esto surge claramente, que desde 1928 hasta 1931 Javier Zequeira era el administrador autorizado del demandado en relación con la finca Santa Inés, y que el demandado, aun cuando tenía entero conocimiento de los términos del contrato de servidumbre, daba por recibido el dinero porque su administrador lo recibía. Y si examinamos los *exhibits* 7 y 8 de la demandante (págs. 98 y 99 T. de E.) vemos que el exhibit 7 es un cheque de diciembre 28, 1929 por $600 a la orden de Javier Zequeira, y el exhibit 8 uno de 16 de agosto de 1930 por $582 a la orden de Javier Zequeira. En ambos cheques aparece que el concepto por el que se hace el pago es por servidumbre de paso por la finca Santa Inés, y al dorso de estos cheques se expresa "aceptado y endosado en saldo de la cuenta que al dorso se expresa" constando a renglón seguido la firma de Javier Zequeira. Como bien dice la demandante en su alegato: "Si Jorge repudió el contrato, como pretende alegar, ¿por qué permitió a su administrador el aceptar estos pagos en la forma expresada?" ¿Y por qué, añadimos nosotros, recibió dichos pagos, como ya anteriormente hemos visto que los recibió, si su administrador los había aceptado por tal concepto si es cierto que no estaba autorizado a aceptarlos? Pero es que hay aun más. Como ya hemos dicho, el 30 de diciembre de 1931 la demandante, en un cheque librado a favor del demandado Jorge Zequeira por $300, hizo constar al margen lo siguiente:

"Concepto del Pago. Finca Santa Inés. Mitad de la servidumbre de vía que pasa por la finca, por un año anticipado, que vence en diciembre 31, 1932.''

Y al dorso de dicho cheque consta lo siguiente:

"Aceptado y endosado en saldo de la cuenta que al dorso se expresa.

"Para abonar a mi cuenta con el N. Y. National City Bank. (Fdo.) Dr. Jorge Zequeira.''

De suerte que aquí ya no es el administrador quien endosa aceptando el saldo de la cuenta expresada al dorso. Aquí quien firma, sin protesta de ninguna especie, es el propio demandado. A nuestro juicio, esta prueba, junto con todas las demás actuaciones del demandado desde que regresó a Puerto Rico, es suficiente para concluir, de acuerdo con la doctrina del caso de *Dooley,* supra, que el demandado ratificó el contrato de servidumbre otorgado por su hermano y que *procede la confirmación de la sentencia apelada.*