Inés Encarnación, demandante y apelante, *v.* José Salim y su esposa Adela Miguel, demandados y apelados.

Núm. 9784.—*Sometido:* Enero 10, 1949. *Resuelto:* Marzo 30, 1949.

*R. Díaz Collazo,* abogado de la apelante; *Vicente Géigel Polanco* y *Miranda & Miranda Esteve,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del tribunal.

El 11 de diciembre de 1944, Inés Encarnación entabló pleito sobre cumplimiento específico de contrato e indemnización de daños y perjuicios, ante la Corte de Distrito del Distrito Judicial de San Juan, contra José Salim y su esposa Adela Miguel. Se alegó en la demanda que los demandados eran dueños de un solar, en Santurce, donde enclavaba un edificio de concreto armado, de dos plantas y sótano, el cual la demandante tomó en arrendamiento según condiciones y pactos consignados en la escritura núm. 19, otorgada el 4 de marzo de 1939 ante el notario H. F. Dottin,(¹) estando los demandados familiarizados con dicha escritura; que a tenor con el ameritado contrato de arrendamiento, el deman-

---

(¹)Según resultó de la prueba, la referida escritura de arrendamiento a favor de la demandante fué otorgada ante el notario H. F. Dottin, con el núm. 19, el 4 de marzo de 1939 por el Dr. Fernando de Juan y su esposa Ana Carmen Gatell, dueños de la propiedad en la fecha indicada en la demanda, y de quienes posteriormente la adquirió Salim por compra. La séptima de

dado José Salim, el 13 de diciembre de 1943, comunicó a la demandante tener una oferta para la compra de la referida propiedad por la suma de treinta y cinco mil dólares; que la demandante, el 17 de diciembre de 1943, aceptó la oferta de los demandados y se dispuso a pagar a éstos la mencionada suma por la descrita propiedad; que posteriormente a la oferta y aceptación indicadas, los demandados sin causa, motivo o justificación alguna dejaron caprichosamente de cumplir con dicha oferta y rehusaron verificar la compraventa de la propiedad, a pesar de las reiteradas gestiones que para obtener tal fin realizó la demandante cerca de los demandados; que para cumplir la demandante con su parte del convenio, practicó gestiones para obtener, y obtuvo, la cantidad de $35,000 fijada por el demandado en su oferta de 13 de diciembre, habiendo estado siempre dispuesta y en condiciones de dar cumplimiento a los términos del convenio existente entre las partes; que la conducta de los demandados negándose a cumplir dicho convenio causó daños y perjuicios a la demandante en la suma de $3,000 durante los doce meses anteriores a la interposición de la demanda,[2] por haberse privado la demandante de percibir alrededor de $250 mensuales de renta mensual de la mencionada propiedad. Solicitó la demandante se condenara a los demandados a otorgarle, mediante el pago de la suma de $35,000, escritura de compraventa de la descrita finca, y al pago de daños y perjuicios por la cantidad de $3,000.

Contestaron los demandados admitiendo ser dueños del inmueble descrito en la demanda así como tener la demandante en arrendamiento el mismo desde el 4 de marzo de

---

las cláusulas de dicha escritura de arrendamiento, que es la que invoca la demandante, es la siguiente:

"Si resolviere el arrendador vender el inmueble arrendado tendrá la arrendataria opción preferente para la compra en iguales condiciones que la mejor oferta que a su dueño le haga otra persona cualquiera."

[2] En el juicio, la demandante solicitó y obtuvo permiso de la corte inferior para enmendar su demanda y conformarla a la prueba, extendiendo el período de daños a "los últimos 24 meses".

1939, pero negaron que a tenor con dicho contrato de arrendamiento el demandado José Salim comunicara a la demandante tener una oferta para la compra de dicha propiedad por la suma de $35,000; alegando en contrario que los demandados, en adición de la finca objeto de la demanda eran dueños también de otra casa y solar contiguos a la primera y de dos solares adyacentes a la segunda propiedad mencionada; que el 11 de diciembre de 1943 el demandado José Salim recibió una oferta de compra del Sr. Antonio Méndez por todas las propiedades indicadas anteriormente, siendo dicha oferta por una suma total para todas las propiedades de $60,000, haciéndose cargo el Sr. Méndez del pago de un crédito hipotecario por la suma de $3,750 existente sobre la propiedad reclamada por la demandante, a la cual señalaba el Sr. Méndez un precio de $35,000 en los $60,000 de la oferta por todas las propiedades, comprometiéndose Méndez, además, al pago de los honorarios de abogado (sic) y costas del registro de la propiedad. Asimismo alegaron que considerando tentadora la oferta de Méndez y sin que mediara aceptación del demandado Salim, éste dió instrucciones al abogado J. Pedro Miranda para que comunicara a la demandante la oferta recibida de Méndez, de acuerdo con lo estipulado en el contrato de arrendamiento celebrado entre aquélla y el anterior dueño de la propiedad; que dicho abogado así lo hizo, pero que la carta dirigida por él a la demandante no reflejó el verdadero ofrecimiento hecho por Méndez a Salim, lo cual motivó que el propio abogado por carta posterior explicara a la demandante cuál había sido la oferta hecha por Méndez a Salim y las condiciones en que éste estaría dispuesto a vender la propiedad; admitió el demandado Salim que la demandante comunicó a su abogado estar dispuesta a comprar el inmueble según la oferta héchale, pero negó que los demandados hicieran oferta alguna a la demandante, alegando que nunca dió consentimiento para vender una de las propiedades sin estar todas ellas incluídas en una sola transacción, y que

después de héchale la oferta por el Sr. Méndez la misma fué mejorada, pero que ya Salim había desistido de vender sus propiedades. Por su parte, la demandada Adela Miguel alegó que la demanda no aducía hechos suficientes constitutivos de una causa de acción en su contra.

Luego de una vista en sus méritos el caso fué sometido, por estipulación de las partes, al juez del tribunal inferior que finalmente dictó la sentencia objeto de esta apelación, toda vez que el juez ante quien se celebró el juicio el 4 de septiembre de 1945, dejó de formar parte de dicho tribunal. Así las cosas, el 12 de abril de 1948 se dictó sentencia declarando sin lugar la demanda. No conforme, apeló la demandante para ante este Tribunal, y en apoyo de su recurso plantea tres errores que bien pueden sintetizarse en que el tribunal inferior cometió error al considerar y apreciar la evidencia y declarar sin lugar la demanda, y al aplicar la ley y la jurisprudencia.

Toda vez que la corte inferior resolvió el caso, según la estipulación de las partes, por las declaraciones de los testigos que declararon ante otro juez, este Tribunal está en las mismas condiciones que el tribunal inferior para apreciar los hechos que surgen del récord ante nos. *Gómez* v. *Trujillo*, 59 D.P.R. 468, 472. Pasemos, pues, a examinarlos.

La prueba *documental* demuestra que el día 4 de marzo de 1939 los esposos Fernando de Juan y Ana Carmen Gatell arrendaron, por un período de tres años prorrogable por otros tres, a la demandante Inés Encarnación la finca descrita en la demanda (la núm. 111 de la Avenida Ponce de León) por el canon mensual de $250. En la escritura de arrendamiento,[3] luego de establecer las condiciones para el arrendamiento en sí, el arrendador concedió una opción preferente a la arrendataria para la compra de la propiedad en iguales condiciones que la mejor oferta que pudiera hacerle cualquiera otra persona.

---

[3] Véase nota 1, supra.

El 31 de mayo de 1940 y por escritura núm. 7 de esa fecha ante el notario Vicente Géigel Polanco, los esposos De Juan–Gatell vendieron a José Salim, para esa fecha casado con Adela Miguel, la misma propiedad que en arrendamiento habían cedido a Inés Encarnación. Por el mismo documento le vendieron también otra propiedad contigua (la núm. 109 de la Avenida Ponce de León) y dos solares adyacentes. En dicha escritura de compraventa—en la que no comparecieron Adela Miguel, esposa de Salim, ni la arrendataria Inés Encarnación—se insertó una cláusula por la cual el comprador Salim reconocía y aceptaba en todos sus términos el contrato de arrendamiento celebrado entre el vendedor y la arrendataria según las cláusulas consignadas en la de arrendamiento.(⁴)

El 11 de diciembre de 1943 José Salim recibió de Antonio Méndez una oferta para la compra de todas las fincas urbanas antes mencionadas, por la suma de $60,000.(⁵) hacién-

---

(⁴)Dicha cláusula es la siguiente:

"CUARTO: El comprador don JOSÉ SALIM reconoce y acepta en todos sus términos el contrato de arrendamiento celebrado entre el vendedor don FERNANDO DE JUAN Y PRIETO, doña Inés Encarnación y doña Sara Roberts Vda. de Gaetán con referencia a la finca marcada letra 'A' o sea el inmueble radicado en el número ciento once de la Avenida Ponce de León del barrio de Santurce de esta ciudad, y se subroga el comprador en todos los derechos que correspondían al dueño anterior de la finca, señor DE JUAN, quedando subsistente el contrato de arrendamiento bajo las mismas cláusulas y condiciones consignadas en la escritura número diez y nueve, otorgada en esta ciudad el día cuatro de marzo de mil novecientos treinta y nueve ante el notario don E. H. F. Dottin."

(⁵)La carta contentiva de dicha oferta es la siguiente:

"San Juan, Puerto Rico,
Diciembre 11, 1943.

"Señor José Salim,
Santurce, Pto. Rico.
Estimado señor:

"Por la presente quiero hacer a Ud. una oferta correspondiente a sus propiedades de Ponce de León núm. 109 y núm. 111 y las que quedan al respaldo de ambas, por una suma de sesenta mil dollars M/C en la forma siguiente:

| | |
|---|---|
| Ponce de León núm. 111 | $35,000 |
| Ponce de León núm. 109 | 15,000 |
| Solar detrás de la Clínica | 500 |
| Ranchoncitos detrás de la núm. 107 | 9,500 |

dose cargo Méndez de pagar además la suma de $3,750 por una hipoteca que gravaba la propiedad en Ponce de León núm. 111 (objeto de este pleito), así como pagar los honorarios de abogado y registro de las escrituras y comisión a los corredores.

El 13 de diciembre de 1943 el abogado J. Pedro Miranda, a nombre de Salim, escribió una carta a la demandante (⁶) informándole que Salim tenía una oferta por la compra de la casa que ella ocupaba en arrendamiento y que teniendo ella una opción de acuerdo con la cláusula séptima de la escritura de arrendamiento, para la compra de la misma en iguales condiciones que la mejor oferta que pudiera Salim recibir de otra persona, se lo comunicaba solicitando una contestación dentro de los siguientes cinco días, la cual, de no recibirse, se entendería como renuncia al derecho que le fué reservado en la dicha escritura.

---

quedando entendido que acepto las condiciones impuestas por Ud. de hacerme cargo de la Hipoteca de $3,750 que pesa sobre la casa núm. 111 (Clínica) así como acepto pagar los honorarios de abogado y Registro de las escrituras y comisión al corredor.

"Esperando pronta atención, soy muy atentamente,

(Fdo.)  *Antonio Méndez.*"

(⁶)El texto de dicha carta es el siguiente:

"Diciembre 13, 1943.

"Sra. Inés Encarnación,
Ave. Ponce de León núm. 111,
Santurce, P. R.
Señora:

"Me informa mi cliente don José Salim, que tiene una oferta para la compra de la casa que Ud. ocupa en la dirección arriba indicada, por la suma de $35,000 (treinta y cinco mil dollars), por lo que de acuerdo con la cláusula 'Séptima' de la escritura de arrendamiento de fecha 4 de marzo de 1939, otorgada ante el notario don E. F. H. Dottin, teniendo Ud. una opción preferente para la compra en iguales condiciones que la mejor oferta que pudiera obtener su dueño de otra persona cualquiera le comunico a Ud. este hecho por si Ud. desea hacer uso de ese derecho.

"Yo espero de Ud. una contestación dentro del plazo de CINCO DÍAS a contar del recibo de la presente en un sentido o en otro, aunque estimaremos que si Ud. no contesta renuncia al derecho que le fué reservado en la expresada escritura.

"Sin otro particular, quedo de Ud. suyo aftmo. S. S. y

Atentamente,

(Fdo.)  *J. Pedro Miranda.*"

El 17 de diciembre de 1943 la demandante contestó al abogado Miranda aceptando la oferta héchale.

El 7 de enero de 1944 el abogado Miranda escribió nuevamente a la demandante aclarando los términos de su carta del día 13 de diciembre de 1943, especificándole entonces cuáles fueron los términos precisos de la oferta héchale a Salim por Méndez.

El 9 de febrero de 1944 Salim escribió directamente a la demandante informándole que la oferta que Méndez le había hecho para la compra de todas sus propiedades había sido retirada por el proponente, indicándole al mismo tiempo que si más adelante recibía Salim alguna otra oferta, o si decidía vender la propiedad que le tenía arrendada, se lo informaría a los fines de que ella ejercitara la opción de compra que tenía reservada en el contrato de arrendamiento.

De la prueba hasta aquí referida, que es toda la documental en autos, debemos concluir que si bien Salim al adquirir la propiedad de los esposos De Juan–Gatell ratificó por la escritura de compraventa todas las cláusulas contenidas en la de arrendamiento—entre las cuales estaba la de opción de compra a favor de la demandante—tal ratificación por él hecha es ineficaz en cuanto a la sociedad de gananciales de Salim y su esposa por no haber ésta concurrido en la dicha escritura de compraventa, ya que si bien Salim podía por sí solo adquirir la propiedad para la sociedad de gananciales, no podía obligar a dicha sociedad a enajenarla en el futuro, sin el consentimiento expreso de su esposa. Artículos 91 y 1313 del Código Civil, ed. 1930; *Robles* v. *Guzmán*, 67 D.P.R. 718, 722 y casos allí citados, y *Consolidated Broadcasting Corp.* v. *Conesa*, 65 D.P.R. 792, 796.

Estando predicada, sin embargo, la acción de la demandante, no tan sólo en la opción de compra consignada en la escritura de arrendamiento antes mencionada—las cláusulas de la cual aceptó Salim al adquirir la propiedad—si que también en la oferta que a tenor con la misma éste le hiciera

a través del abogado Miranda, y su aceptación, veamos si la prueba *testifical* en autos revela en cuanto a la predicha oferta, que la esposa de Salim diera el consentimiento expreso que la ley requiere para hacer exigible una obligación por vía de la acción instada por la demandante.

Sobre este extremo la prueba de la demandante sólo hace referencia a una conversación entre ella y Salim en la casa de este último encontrándose presente la esposa de Salim. Dicha conversación, según la relata la propia demandante, fué la siguiente:

"P. ¿Dónde vivía el Sr. Salim?
R. Por la calle Estrella.
P. ¿El Sr. Salim estaba solo?
R. Con la señora.
P. ¿Lo encontró allí?
R. Sí, señor.
P. ¿Qué pasó en la entrevista?
R. Volvimos a tratar el asunto y entonces él me dijo: 'bueno, yo se la vendería pero mi señora se opone'. Yo le contesté que yo he hecho los contratos con usted y usted me la ofreció y yo espero que usted se decida. Él me contestó: 'ella no la quiere vender'. Entonces la señora dijo: 'me da lo mismo porque es para la educación de mis hijas'.
P. ¿Ella estaba presente?
R. Sí, señor."

El demandado Salim, en su contrainterrogatorio como testigo de la demandante, declaró que en ocasión de una visita que ésta le hiciera en su casa (varios días después de la carta-oferta del abogado Miranda y su aceptación) él le había dicho a la demandante que su esposa no aceptaba vender ninguna de las propiedades, y que su propia esposa así se lo había indicado a ella.

Sobre este extremo también, la prueba de los demandados demostró que en una visita que le hizo el abogado Gaspar Encarnación Santana, hermano de la demandante, a José Pedro Miranda, abogado del demandado Salim, Miranda le indicó a Encarnación, luego de explicarle la equivocación que

había sufrido al trasmitir a la demandante la oferta que había recibido Salim de Méndez, que además había que obtener el consentimiento de la esposa de Salim, y que tenía entendido que dicha señora no estaba dispuesta a vender las propiedades ni ratificar las actuaciones de su esposo. La propia esposa de Salim declaró que en ningún momento ella dió su consentimiento para la venta de las propiedades, lo cual había dicho a su esposo.

El resto de la prueba de ambas partes giró esencialmente alrededor de si la oferta contenida en la carta del abogado Miranda, no siendo la que Salim recibiera de Méndez, fué ratificada o no verbalmente por Salim. Sobre este extremo fué contradictoria. No creemos, sin embargo, necesario resolver sobre este conflicto de la prueba, ya que no estamos inclinados a resolver que la esposa de Salim ratificara las actuaciones de éste de tal forma que pudiera exigirse el cumplimiento específico de la oferta hecha por Salim a la demandante, que como ya hemos visto, envolvía la enajenación de bienes inmuebles de la sociedad de gananciales.

*Debe confirmarse la sentencia apelada.*