Wilson Trabal Morales y otra, demandantes y recurrentes, *v.* Confesor Ruiz Rodríguez y otra, demandados y recurridos.

*Número:* RE-88-66    *Resuelto:* 26 de enero de 1990

*Edgardo Delgado Brás*, abogado de los recurrentes; *Julio E. Silva Ayala*, de *Silva Ayala & Santiago Irizarry*, abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

El presente caso nos permite explorar importantes aspectos relativos a la naturaleza, requisitos y efectos de la dación en pago.

I

Los antecedentes procesales y fácticos se remotan al 22 de septiembre de 1981. En esa fecha, Laura E. Rosario presentó acción civil ante el Tribunal de Distrito, Sala de Mayagüez (TD-81–1555), contra sus ex arrendatarios, Eusebio Mangual Tejada y su esposa María I. Mangual Santiago. Reclamaron $3,882.62 en concepto de renta, agua, electricidad y daños a la propiedad, más $2,500 de honorarios y costas. El 30 de octubre los esposos Mangual-Mangual contestaron. Aceptaron adeudar solamente $197.04 y negaron toda otra responsabilidad.[1] Cuatro (4) días después de esa contestación, mediante la Escritura Pública Núm. 42 de 3 de noviembre de 1981 ante el notario Edgardo Delgado Brás, los esposos Mangual-Mangual constituyeron hipoteca voluntaria que gravó un inmueble de su propiedad sito en el Barrio Miradero de Mayagüez para garantizar la suma de $15,000 de principal, intereses y otros conceptos. La hipoteca fue inscrita en el Registro de la Propiedad correspondiente.

Luego de varios trámites procesales, el 9 de diciembre de 1983 recayó sentencia contra los demandados Mangual-Mangual, la cual se les notificó el 13 de diciembre. Oportuna-

---

[1] La demanda y contestación fueron después enmendadas para sustituir e incorporar a la Sucesión de Eusebio Mangual Tejada, quien falleció el 9 de enero de 1982.

mente, un mes después —10 de enero de 1984— por escritura pública, éstos otorgaron un Contrato de Dación en Pago a favor de Wilson Trabal Morales, tenedor del pagaré hipotecario antes aludido. Este último, aunque a esa fecha estaba casado con Velma Hernández Vega, compareció solo al otorgamiento de esa escritura.

La Escritura de Dación en Pago —que de hecho nunca fue presentada para inscripción en el Registro de la Propiedad— en lo pertinente señalaba:

QUINTO: Y con el objeto de pagar dicha deuda hipotecaria y sus intereses que suman a TRES MIL DÓLARES *los comparecientes de la primera parte dan en pago al acreedor Don Wilson Trabal el Bien Inmueble descrito* en el hecho segundo de esta escritura con todas sus pertenencias y cuanto la constituye.

SEXTO: *Y en virtud de esta Dación en pago la hipoteca queda cancelada en cuanto a capital e intereses y créditos adicionales por confusión de derechos.*

SEPTIMO: Y con el objeto de que pueda cancelarse esta hipoteca en El Registro de la Propiedad, el tenedor del pagaré Don Wilson Trabal me hace entrega del mismo el cual está firmado por Don Eusebio Mangual y Doña María Isabel Mangual. Firmado, signado, rubricado y sellado por el notario autorizante, Lco. Edgardo Delgado Brás, autorizante de dicha escritura y procedo a inutilizar dicho pagaré taladrando sus firmas quedando sin valor ni efecto legal. (Énfasis suplido.) Apéndice VIII, págs. A-45–A-46.

La demandante Laura Rosario Domínguez, que desconocía esa enajenación, embargó dicho inmueble para ejecutar la sentencia recaída a su favor. El 10 de diciembre de 1984, previo los trámites de rigor, se celebró la subasta judicial. Como únicos postores comparecieron ella y su esposo, Confesor Ruiz Rodríguez. Se les adjudicó la propiedad por la suma de $1,000. Ese mismo día, el Alguacil otorgó la correspondiente escritura de venta judicial, la cual fue presentada en el Registro de la Propiedad el 11 de diciembre de 1984, y finalmente fue inscrita el 29 de marzo de 1985.

En cuanto a la Escritura de Dación en Pago, poco más de un (1) año después, el 20 de mayo de 1986 Velma Hernández Vega, esposa de Trabal Morales, ratificó la dación ante el notario Nicanor Laguillo Rodríguez mediante la Escritura Núm. 21 denominada "Acta Aclaratoria y Ratificación Dación en Pago".

Durante los meses de julio y agosto del mismo año, los esposos Trabal-Hernández reclamaron sin éxito el pago del crédito hipotecario a los esposos Ruiz-Rosario. Como consecuencia presentaron la presente acción de ejecución de hipoteca (CS-86–1336). Previa vista en su fondo, el Tribunal Superior, Sala de Mayagüez (Hon. Carmen J. Ortiz Ramos, Juez), la declaró sin lugar al concluir que concurrieron todos los requisitos de una dación en pago y, en consecuencia, la obligación primitiva quedó extinguida por confusión de derechos. Resolvió, a su vez, que no procedía la ejecución ya que la hipoteca, por ser accesoria a la obligación principal, también quedó extinguida.

No conforme, a solicitud de los esposos Trabal-Hernández acordamos revisar. En síntesis, cuestionan que la dación en pago haya extinguido el crédito hipotecario.[2] Sostienen que no medió entrega, requisito esencial de la dación en pago y, por ende, las prestaciones permanecieron en su estado original. Según esta hipótesis, aducen que al subsistir la hipoteca procedía su ejecución. No tienen razón.

## II

Nuestro Código Civil, igual que el español, no contiene una regulación expresa de la dación en pago (*datio in solutum*). No obstante, en múltiples ocasiones alude a ella de

---

[2] En su comparecencia, los demandados recurridos Ruiz-Rosario plantean escuetamente, por primera vez, que esta dación en pago constituyó una enajenación en fraude de acreedores. En ausencia de prueba al efecto, no habremos de considerar ese señalamiento, máxime ante el curso decisorio que adoptamos.

manera indirecta.[3] Díez-Picazo la define como "todo acto de cumplimiento de una obligación que, con el consentimiento del acreedor, se lleva a cabo mediante la realización de una prestación distinta a la que inicialmente se había establecido". L. Díez-Picazo, *Fundamentos del Derecho Civil Patrimonial*, 2da ed., Madrid, Ed. Tecnos, 1983, Vol. 1, pág. 662. Véanse, además: J. Castán Tobeñas, *Derecho Civil español, común y foral*, 10ma ed., Madrid, Ed. Reus, 1967, T. III, pág. 317; *Reece Corp. v. Ariela, Inc.*, 122 D.P.R. 270 (1988).

■ "Mediante la *datio in solutum* puede extinguirse todo tipo de obligaciones con indiferencia de que su origen sea negocial, legal o el hecho ilícito, porque es evidente que la finalidad a la que la misma se enrumba, facilitar con la aquiescencia de los acreedores la satisfacción de los créditos, se presenta como deseable en cualquier especie de vínculo obligatorio, siempre, como es natural, que la entrega de la prestación distinta de la debida sea aceptada por el acreedor 'en lugar del pago' (*pro soluto*)." (Énfasis en el original.)[4]

■ La dación en pago —que no debe confundirse con la cesión de bienes para pago—[5] tiene los requisitos siguientes: (1) una obligación preexistente que se quiere extinguir; (2) un acuerdo de voluntades entre el acreedor y deudor en el sentido de considerar extinguida la antigua obligación a cambio de la nueva prestación, y (3) una prestación realizada

---

[3] Arts. 1411, 1528 y 1748 del Código Civil, 31 L.P.R.A. secs. 3921, 4219 y 4953.

[4] A. Cristóbal Montes, *El pago o cumplimiento de las obligaciones*, Madrid, Ed. Tecnos, 1986, pág. 157.

[5] Mientras en la *dación en pago* la obligación se extingue en una unidad de acto al entregar la cosa en sustitución del pago, en la *cesión para pago* los acreedores sólo tienen un encargo para que liquide el activo que con este objeto se cede, se repartan lo percibido y, si quedase un sobrante, hagan entrega de éste al deudor. Si con la liquidación no se obtuviere lo suficiente, el obligado sólo quedará libre de responsabilidad por el importe líquido de los bienes cedidos. L. Pascal Estevill, *El Pago*, Barcelona, Ed. Bosch, 1986, pág. 279.

con intención de efectuar un pago total y definitivo. J. Puig
Brutau, *Fundamentos del Derecho Civil*, 3ra ed., Barcelona,
Ed. Bosch, 1985, T. I, Vol. 2, págs. 322-324.

■ En cuanto a su naturaleza, vale decir que en el pa-
sado esta figura jurídica se ha asimilado a la compraventa
porque, como apunta Castán Tobeñas, "[l]a solución preferi-
ble parece ser considerar la dación en pago como una modali-
dad o variante del pago . . . pero que implica, a la vez, una
transmisión onerosa y ofrece, desde este punto de vista, ana-
logías con el contrato de compraventa". (Énfasis suprimido.)
Castán Tobeñas, *op. cit.*, pág. 319. *Cf. Quiñones v. El Regis-
trador*, 20 D.P.R. 144 (1914). Otros autores, sobre todo fran-
ceses, la han considerado como una novación por cambio de
objeto. Puig Brutau, *op. cit.*, pág. 322. Actualmente, sin em-
bargo, cobra terreno la tesis que distingue claramente la da-
ción en pago de la compraventa y la novación, y que rechaza
con igual vehemencia la doctrina que la califica de acto com-
plejo, mezcla de pago, novación y venta. Ahora bien, aunque
ya ha ganado identidad propia, su escasa reglamentación
obliga en muchas ocasiones a recurrir a otras figuras de ma-
yor configuración y regulación para identificar y precisar su
alcance y sus efectos.

■ A pesar de los serios debates que ha suscitado esta
figura, existe un virtual consenso de que su principal efecto
consiste en la extinción de la obligación originaria y que, en
consecuencia, también desaparecen totalmente sus derechos
accesorios y garantías. Puig Brutau, *op. cit.*, pág. 324; A.
Cristóbal Montes, *El pago o cumplimiento de las obligacio-
nes*, Madrid, Ed. Tecnos, 1986, pág. 171.

### III

Con estos preceptos doctrinales en mente, pasemos a de-
terminar si concurren en el caso de autos los requisitos indis-
pensables de la dación en pago.

El *primero* está presente. El crédito hipotecario ascendente a $15,000, intereses a razón de diez punto cinco (10.5) por ciento anual y un crédito adicional de $1,500 evidenciado todo en el pagaré al portador, constituía la obligación que se deseaba extinguir. En cuanto al *segundo* requisito, cabe señalar que entre los acreedores Trabal-Hernández y los deudores Vda. de Mangual y Sucn. Mangual hubo un acuerdo de voluntades(6) tendente a que la prestación debida se reemplazara por otra y se atribuyera a la realización de esta última efectos extintivos de la relación obligatoria. Así quedó consignado en la quinta cláusula del contrato: "con el objeto de pagar [la] deuda hipotecaria y sus intereses que suman a TRES MIL DÓLARES, los comparecientes [la Sucn. Mangual] *dan en pago* al acreedor Don Wilson Trabal el Bien Inmueble descrito [solar en el Bo. Miradero de Mayagüez] ... con todas sus pertenencias y cuanto la constituye." (Énfasis suplido.) Apéndice VIII, págs. A-45–A-46. Véanse: *Surís v. Registrador*, 37 D.P.R. 925 (1928); *Méndez v. El Registrador de la Propiedad*, 7 D.P.R. 478 (1904).

El corecurrente Trabal-Morales plantea que este llamado "acuerdo de voluntades" no llegó a perfeccionarse. Aduce que la comparecencia de su esposa Velma Hernández Vega era imprescindible para la validez del negocio. Sobre este particular, el Art. 1313 del Código Civil, 31 L.P.R.A. sec. 3672, dispone, *in fine*, lo siguiente:

> No obstante lo dispuesto en la sec. 284 de este título, ninguno de los dos podrá donar, enajenar, ni obligar a título oneroso, los bienes muebles e inmuebles de la sociedad de gananciales, sin el consentimiento escrito del otro cónyuge, excepto las cosas destinadas al uso de la familia o personales de

---

(6) Es necesario recordar la disposición del Código Civil de que el "deudor de una cosa no puede obligar a su acreedor a que reciba otra diferente, aun cuando fuere de igual o mayor valor que la debida. Tampoco en las obligaciones de hacer podrá ser sustituido un hecho por otro contra la voluntad del acreedor". Art. 1120 (31 L.P.R.A. sec. 3170).

acuerdo con la posición social o económica de ambos cónyuges.

Todo acto de disposición o administración que sobre dichos bienes haga cualquiera de los cónyuges en contravención a esta sección, y los demás dispuestos en este título, no perjudicará al otro cónyuge ni a sus herederos.

■ En nuestro ordenamiento jurídico rige la norma de que ambos cónyuges son los administradores de la sociedad de gananciales. Art. 91 del Código Civil, 31 L.P.R.A. sec. 284. Por lo tanto, como regla general, es indispensable la concurrencia de ambos cónyuges tanto para enajenar como para adquirir bienes de o para la sociedad de gananciales. *Padró Collado v. Espada*, 111 D.P.R. 56 (1981); *Int'l Charter Mortgage Corp. v. Registrador*, 110 D.P.R. 862, 868 (1981); *Silva Ramos v. Registrador*, 107 D.P.R. 240 (1978); *Aguilú v. Sociedad de Gananciales*, 106 D.P.R. 652 (1977).

■ Ciertamente la adquisición de un bien inmueble mediante una dación en pago es un acto de disposición que requiere para su validez y eficacia contractual el consentimiento escrito de ambos cónyuges. I. Picó Vidal, *Sentido y alcance de la reforma de la administración de los bienes gananciales*, 18 Rev. Jur. U.I.A. 241 (1984). Sin embargo, ese acto de disposición de bienes gananciales realizado sin el consentimiento inicial de Velma Hernández Vega no era nulo —como afirma Trabal Morales— sino anulable. Estamos ante un caso típico de negocio *ratificable*. *Madera v. Metropolitan Const. Corp.*, 95 D.P.R. 637 (1967). El acta de ratificación otorgada el 20 de mayo de 1986 por Velma Hernández Vega purificó la dación en pago de ese vicio del que originalmente adolecía. De esta manera ella renunció expresamente a invocar la causa de nulidad. El hecho de que la ratificación se efectuara por los demandados recurridos Ruiz-Rosario en fecha posterior a la adquisición del inmueble en nada afecta

la relación entre las partes que participaron en la dación en pago.

> ... [E]l contrato, que ya tenía eficacia (provisional) como si no tuviera defecto alguno, la conserva y mantiene de manera definitiva. Más que de una convalidación retroactiva podría hablarse de una adquisición de validez definitiva. La validez y eficacia inicial queda consolidada.
>
> DÍEZ-PICAZO comenta que la regla de la retroactividad de la confirmación plantea algún problema respecto de terceros. Algunas legislaciones dejan a salvo estos derechos de los efectos de la confirmación, pero nuestro Código nada indica. Ha de tenerse en cuenta, observa F. DE CASTRO, que el contrato que se confirma tiene un vicio que haría posible su invalidación, *pero que en todo caso no será nulo hasta que así sea declarado judicialmente.* Su validez inicial es suficiente para que la confirmación *lo sane de raíz*, con la consecuencia de que la *validez* del contrato confirmado podrá oponerse con eficacia a quienes pretendan haber obtenido derechos que lo contradigan, *antes de la confirmación.* (Énfasis suplido.) J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1978, T. II, Vol. 1, págs. 334–335.[7]

■ Por último, en cuanto al *tercer* requisito de esta institución jurídica —prestación realizada con intención de efectuar un pago total y definitivo— es menester aclarar que requiere, además de la existencia del *animo solvendi*, que se *perfeccione* la nueva prestación convenida. Es decir, el negocio no estaría completo o no se perfeccionaría mientras no se ejecute la prestación sustitutiva. El deudor debe hacer al acreedor una atribución patrimonial, que puede ser la trans-

---

[7] Los autores comentan el Art. 1.313 español, equivalente al Art. 1265 del Código Civil nuestro, 31 L.P.R.A. sec. 3524, que dispone: "La confirmación purifica el contrato de los vicios de que adoleciera desde el momento de su celebración." (Énfasis suplido.) Aunque este caso trata de una ratificación, el artículo precitado y los comentarios al respecto son de aplicación, ya que "[l]a ratificación y la confirmación presentan características comunes e iguales efectos . . .". *Madera v. Metropolitan Const. Corp.*, 95 D.P.R. 637, 646 esc. 9 (1967).

misión de la propiedad de una cosa o de la titularidad de un derecho, la prestación personal de servicios, etc. Puig Brutau, *op. cit.*, 1985, T. I, Vol. 2, pág. 323. En resumidas cuentas, cuando la nueva prestación implica el pago con un bien inmueble, como el caso de autos, *es necesario que se efectúe la tradición, o sea, su entrega.*

■ Concluimos afirmativamente que se cumplió con este requisito de la entrega. A fin de cuentas, de acuerdo con el Art. 1351 del Código Civil, 31 L.P.R.A. sec. 3811, los bienes inmuebles se entregan al otorgarse una escritura pública. Hemos concluido previamente la validez de la escritura pública y su ratificación en la que se efectuó la dación en pago con el inmueble objeto de la controversia. Por su similitud con la compraventa, no vemos razones para no hacer extensible esta norma a la dación en pago.

## IV

Aclarados estos extremos, ¿qué efectos tuvo la dación en pago sobre la hipoteca que gravaba el inmueble?

Como señaláramos anteriormente, el principal efecto de la dación en pago es la extinción de la obligación originaria. *Carrera v. Marrero*, 27 D.P.R. 550 (1919). Como secuela de dicha extinción, también desaparecen sus derechos accesorios y garantías.

■ Sabido es que el derecho real de hipoteca se caracteriza tanto por su accesoriedad como por su función de asegurar una percepción dineraria. Se extingue de manera indirecta a consecuencia de la extinción de la obligación garantizada o por otras causas que directamente actúan sobre la hipoteca en sí, entre ellas, la confusión de derechos; esto es, reunirse la hipoteca y la propiedad en una misma persona. Al igual que en España, nuestro ordenamiento jurídico no admite el supuesto de hipoteca sobre cosa propia. R.M. Roca

Sastre, *Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosch, 1979, T. IV, Vol. 2, pág. 1188.

En el caso de autos se dan ambas circunstancias. Una, la hipoteca constituida sobre la finca quedó extinguida al los deudores —Vda. de Mangual y Suc. Mangual— dar en pago el inmueble. Como resultado, los aquí demandantes Trabal-Hernández advinieron dueños de la finca hipotecada. Esa confusión de derechos extinguió la hipoteca de forma directa. En definitiva, no procede la acción de ejecución de hipoteca.

## V

En sus alegatos, ambas partes dedican grandes esfuerzos a discutir la figura del "tercero registral" y su aplicación al caso.[8] Un examen de los autos nos convence de que dicha controversia no fue objeto de alegaciones ni planteada en el tribunal de instancia. Estamos, pues, impedidos en esta etapa apelativa de dilucidar ese extremo. Así nos adherimos a la norma vigente de que en apelación nos abstendremos de adjudicar cuestiones no planteadas en primera instancia. *Sánchez v. Eastern Air Lines, Inc.*, 114 D.P.R. 691 (1983); *Santiago Cruz v. Hernández Andino*, 91 D.P.R. 709, 712 (1965).

*Se dictará sentencia confirmatoria.*

---

[8] No estamos ajenos que la presente decisión tiene como consecuencia configurar en teoría una situación de dos (2) dueños sobre una misma finca. Aclaramos, no obstante, que ello no dispone del aspecto de si los esposos Trabal-Hernández pueden instar válidamente una acción reivindicatoria en cuya ocasión sería propicio dilucidar la alegada contención de tercero registral de los esposos Ruiz-Rosario.