
Versión para imprimir

| | |
|---|---|
| Abengoa Puerto Rico, S.E.,<br>    Demandante Reconvenida<br>v.<br>Autoridad Energía Eléctrica<br>    Demandada Reconveniente<br>v.<br>Abengoa, S.A.<br>    Tercera Demandada Reconviniente<br>    Y demandada Coparte<br>    Peticionaria<br><br>American International Insurance Co.<br>Of Puerto Rico, Tercera Demandada,<br>Demandante Contra Coparte<br>    Recurrida<br><br>Unipro, S.E., Induchem<br>Enviromental Services, Inc. y Passco<br>  Inc.<br>    Interventores | Certiorari<br><br>2009 TSPR 133<br><br>176 DPR ____ |

Número del Caso: CC-2008-396

Fecha: 14 de agosto de 2009

Tribunal de Apelaciones:

      Región Judicial de San Juan

Juez Ponente:

      Hon. Emmalind García García

Abogados de la Parte Peticionaria:

      Lcda. Katarina Stipec Rubio
      Lcdo. Pedro Jiménez

Abogados de la Parte Recurrida:

      Lcdo. Edward Hill Tollinche
      Lcdo. Francisco A. Rosa Silva

Materia: Incumplimiento de Contrato, Daños y Perjui    cios

Este documento constituye un documento oficial del    Tribunal Supremo que está sujeto a los cambios y correccione    s del proceso de compilación y publicación oficial de las    decisiones del Tribunal. Su distribución electrónica se hace c    omo un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

ABENGOA PUERTO RICO, S.E.,

**Demandante Reconvenida**

v.

AUTORIDAD ENEGÍA ELÉCTRICA

**Demandada Reconveniente**

v.

ABENGOA, S.A.,

Tercera Demandada
Reconviniente
Y Demandada Coparte

**Peticionaria**

AMERICAN INTERNATIONAL
INSURANCE CO. OF PUERTO
RICO, Tercera Demandada,
Demandante Contra Coparte

**Recurrida**

UNIPRO, S.E., INDUCHEM
ENVIRONMENTAL SERVICES, INC. Y
PASSCO, INC.

**Interventores**

CC-2008-396

Opinión del Tribunal emitida por el Juez Asociado señor Rivera Pérez.

San Juan, Puerto Rico, de 14 de agosto de 2009.

Tenemos la ocasión para resolver si la cláusula de selección de foro pactada por dos entes corporativos, Abengoa S.A. y American International Group, Inc., en un

contrato de indemnidad es inaplicable a la luz de la doctrina de fraccionamiento de causas de acción.

I

En noviembre de 1994, la Autoridad de Energía Eléctrica, en adelante AEE, celebró una subasta pública para la realización del proyecto "Repotenciación de las Unidades 5 y 6 de la Planta Termoeléctrica de San Juan". A la referida subasta comparecieron varias entidades, entre ellas, la compañía española Abengoa, S.A. Luego de evaluar las propuestas de los licitadores, la subasta fue adjudicada a favor de Abengoa, S.A. Posteriormente, Abengoa S.A. con autorización de la AEE cedió el contrato para la realización del referido proyecto a su subsidiaria, Abengoa de Puerto Rico, S.E., en adelante Abengoa PR.

En ese mismo año, Abengoa, S.A. suscribió con American International Group Europe, en adelante AIG Europe, el "Convenio General de Indemnización" para establecer "el régimen general de otorgamiento de fianzas"[1] a favor de Abengoa, S.A. y de todas sus subsidiarias. Es imperativo puntualizar que AIG Europe suscribió dicho contrato a su favor y en representación de "cualquier miembro de American International Group, Inc. que pueda disponer o emitir una Fianza dentro y fuera de España […] y/o cualquier otra compañía designada para actuar como Asegurador, Coasegurador y/o Reasegurador."[2] Además de regular el régimen de

---

[1] Apéndice del recurso de *Certiorari,* pág. 474.

[2] *Íd.*

expedición de fianzas entre Abengoa, S.A. y los miembros de AIG Europe, el Convenio General de Indemnización de 1994 contiene una cláusula de selección de foro mediante el cual las partes pactaron que litigarían sus disputas en relación al contrato en los Tribunales de Sevilla, España.

Así las cosas y luego de varios trámites, la AEE y Abengoa PR otorgaron un contrato para realizar unos trabajos de consistentes en aumentar la potencia de las Unidades 5 y 6 de la Planta Termoeléctrica de San Juan. Conforme a lo pactado, Abengoa PR comenzó la construcción del sofisticado equipo para el proyecto.

El 1 de abril de 1999, Abengoa, S.A. y AIG Europe otorgaron un nuevo contrato de indemnización, en adelante Convenio de 1999, esencialmente idéntico al contrato de suscrito en 1994. Al igual que en el primer contrato de indemnización, AIG Europe suscribió dicho contrato a su favor y en representación de "cualquier miembro de American International Group, Inc. que pueda disponer o emitir una Fianza dentro y fuera de España […] y/o cualquier otra compañía designada para actuar como Asegurador, Coasegurador y/o Reasegurador."[3]

Asimismo, el Convenio de 1999 incorporó una cláusula de selección de foro. La referida cláusula dispuso lo siguiente:

> 13a. Con renuncia al fuero que pudiese corresponderles, ambas partes se someten para todas las cuestiones que pudiesen

---

[3] Apéndice del recurso de *Certiorari,* pág. 478.

> derivarse del presente documento y del
> documento de fianza a la jurisdicción de
> los Jueces y Tribunales del Ordenante.

Conviene señalar que el Convenio de 1999 definió *ordenante* como "el indemnizador y/o cualquiera de sus filiales y/o cualquiera de sus empresas vinculadas […] que solicitan una Fianza a la Compañía."[4] De tal definición, surge con claridad que Abengoa, S.A. es el ordenante. A su vez, el Convenio de 1999 definió *compañía* como "cualquier miembro de American International Group, Inc. que pueda disponer o emitir una Fianza dentro o fuera de España."[5]

Al año siguiente, Abengoa PR instó demanda contra la AEE por incumplimiento de contrato y daños y perjuicios. Abengoa PR alegó, *inter alia*, que no pudo proceder con la realización de la fase final de instalación y construcción del equipo toda vez que, transcurridos cinco años desde la adjudicación de la subasta, la AEE aún no había obtenido los permisos ambientales necesarios para continuar las obras.

Por su parte, la AEE reconvino y alegó que Abengoa PR incumplió el contrato suscrito entre las partes al abandonar el proyecto sin esperar a que se otorgaran los permisos ambientales necesarios, causándole así daños. La AEE, a su vez, entabló demanda contra tercero contra Abengoa, S.A.[6] y

---

[4] *Íd.*

[5] *Íd.*

[6] Es menester señalar que la causa de acción contra Abengoa, S.A. se ampara en un contrato de garantía solidaria que alegadamente suscribió para avalar las obligaciones de su subsidiaria, Abengoa PR.

American International Insurance Company, fiadora del proyecto.

Luego de varios incidentes procesales, el 13 de mayo de 2005, American International Insurance Company, en adelante AIICO, presentó demanda coparte contra Abengoa, S.A. En dicha demanda, AIICO alegó que Abengoa S.A. suscribió un contrato de indemnidad mediante el cual se obligó a indemnizarla por todos los gastos y pérdidas incurridos como resultado de la expedición de fianzas a favor de Abengoa, S.A. En vista de lo anterior, AIICO solicitó que se dictara sentencia condenando a Abengoa, S.A. a pagarle a la AEE cualquier suma que tuviere que pagar a ésta y, además, solicitó que se le ordenara el reembolso por todo pago o gasto incurrido por ella como resultado de la emisión de fianzas para el proyecto.

Es menester señalar que la demanda coparte instada por AIICO contra Abengoa, S.A. se ampara en un contrato intitulado "General Contract of Indemnity", en adelante GCI. No obstante, el GCI no contiene fecha, no está notarizado, no tiene el sello corporativo de AIICO y, además, está firmado solamente por el Sr. José Calvo Sebastián, oficial de Abengoa, S.A.

En respuesta a la demanda contra coparte, Abengoa, S.A. presentó una Moción de Desestimación. Alegó que el Convenio de 1999, suscrito con AIG Europe —el cual incluye a AIICO— contiene una cláusula de selección de foro que dispone que todos los asuntos relacionados con la indemnidad por parte

de Abengoa S.A., como resultado de las fianzas emitidas por cualquier miembro de American Internacional Group, Inc., se litigarán exclusivamente en los Tribunales de Sevilla, España.  Por su parte, AIICO se opuso a la solicitud de desestimación y arguyó que la demanda de coparte estaba fundamentada en el GCI, el cual no contiene una cláusula de selección de foro, razón por la cual podía exigir la indemnidad a Abengoa, S.A. en los Tribunales de Puerto Rico.

Luego de ponderar los argumentos esbozados por las partes, el Tribunal de Primera Instancia desestimó la demanda de coparte instada por AIICO en contra de Abengoa, S.A. El tribunal *a quo* determinó que a tenor con lo pautado en Unisys v. Ramallo, *infra*, y en los Convenios de 1994 y 1999, Abengoa, S.A. y AIICO están obligadas a dirimir en los tribunales españoles cualquier controversia relativa a la indemnidad de la primera respecto a las fianzas emitidas por AIICO para la realización del proyecto en la Planta Termoeléctrica de San Juan.

El foro primario resolvió que aún cuando el GCI no está firmado, fechado ni notarizado, no contradice las cláusulas de selección de foro plasmadas en los Convenios de 1994 y 1999 puesto que no contiene una cláusula a esos efectos. Determinó, además, que AIICO admitió la validez y obligatoriedad del Convenio de 1999 mediante una carta suscrita por la Sra. Joann Kerwin, -representante de American Internacional Underwriters, filial de AIICO- en donde le notifica a Abengoa, S.A. que tiene la obligación de

rembolsar a AIICO los gastos que esta viniera obligada a pagar como fiadora a tenor con el Convenio de 1999.

Finalmente, el foro primario razonó que la demanda coparte instada por AIICO en contra de Abengoa, S.A. complicaría innecesariamente los procedimientos toda vez que el caso versaba sobre temas técnicos, estaba bastante adelantado y dicha reclamación no estaba relacionada con las causas y hechos que serían adjudicados en la controversia original. En vista de lo anterior, el foro de instancia decretó que, en virtud de la amplia discreción que posee para manejar los procedimientos de forma justa, rápida y económica, procedía la desestimación de la demanda contra coparte.

Inconforme con dicho dictamen, AIICO recurrió ante el Tribunal de Apelaciones. Adujo que el foro primario erró al fundamentar la desestimación de la demanda contra coparte en los Convenios de 1994 y 1999 suscritos entre Abengoa, S.A. y AIICO toda vez que la referida demanda se fundamentaba en el Código Civil y en el GCI.

El foro apelativo intermedio revocó el dictamen del tribunal *a quo* y resolvió que, independientemente de la existencia y validez de la cláusula de selección de foro, en nuestra jurisdicción impera la doctrina de fraccionamiento de causas de acción. Cónsono con lo anterior, determinó que como la demanda coparte incoada por AIICO está relacionada con la demanda interpuesta por Abengoa PR en contra de la AEE, todas las controversias debían ser dilucidadas conjuntamente, para

así evitar el fraccionamiento de causas e incurrir en gastos innecesarios y molestias adicionales para los demandados.

Insatisfecho con tal determinación, Abengoa, S.A. presentó un recurso de *certiorari* ante este Tribunal y sostiene que el Tribunal de Apelaciones cometió los errores siguientes:

> PRIMER ERROR: Erró el TA al negarse a seguir a Unisys v. Ramallo, 128 D.P.R. 842 (1991) y al utilizar en vez la doctrina sobre el fraccionamiento, cuando media un contrato internacional entre matrices corporativas sofisticadas que selecciona expresamente al foro aplicable, y anticipa contractualmente la posibilidad de un fraccionamiento.

> SEGUNDO ERROR: En la alternativa, erró el TA al no deferir al ejercicio de la amplia discreción procesal del TPI al desestimar sin prejuicio una reclamación tardía y meramente permisible, que complicaría innecesariamente el litigio ante el TPI, no afecta a las otras controversias, y por definición no puede adjudicarse de forma simultánea en el mismo pleito.

Examinada la petición de *certiorari*, acordamos expedir. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver sin ulterior trámite.

II

En nuestra jurisdicción rige el principio de libertad de contratación, el cual le permite a las partes "establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público".[7]  A tenor con dicho principio y como parte de la voluntad e intención entre las partes, éstas pueden incluir en los contratos que suscriban una cláusula de

---

[7] Artículo 1207 del Código Civil, 31 L.P.R.A  sec. 3372.

selección de foro. Como se sabe, las cláusulas de selección de foro tienen el propósito de establecer de antemano la jurisdicción del tribunal que entenderá en el caso. Ello supone, a su vez, una renuncia a la jurisdicción de determinado tribunal.

En Unisys v. Ramallo, *supra*, tuvimos la oportunidad de adjudicar la validez y aplicación de las cláusulas de selección de foro. En esa ocasión y por no contar con jurisprudencia relativa a las cláusulas de selección de foro, acudimos a la casuística federal.

Las cláusulas de selección de foro "están íntimamente relacionadas con la política pública de no imponer trabas al comercio interestatal e internacional."[8] A tales efectos, el Tribunal Supremo de Estados Unidos en Bremen v. Zapata, *infra*, resolvió:

> The expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts. […] We cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts.[9]

En aras de poner en vigor las clausulas de selección de foro, negociadas bajo el palio de la libertad de contratación, los tribunales federales y estatales desterraron paulatinamente la visión provincial que requería

---

[8] Unisys v. Ramallo, *supra*, pág. 856.

[9] 407 U.S. 1, 9 (1971). Énfasis suplido.

que todas las controversias fuesen resueltas en sus tribunales. De esta manera, el Tribunal Supremo de Estados Unidos le dio paso a la libertad de contratación entre las partes y, a su vez, fomentó el comercio internacional.

A tenor con lo anterior, el Tribunal Supremo de Estados Unidos sostuvo que las cláusulas de selección de foro: "are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances. […] Thus, in the light of present-day commercial realities and expanding international trade <u>we conclude that the forum clause should control absent a strong showing that it should be set aside.</u>"[10]

Teniendo como norte lo resuelto por el Tribunal Supremo de Estados Unidos, concluimos en <u>Unisys v. Ramallo</u>, *supra*, que las cláusulas contractuales de selección de foro son *prima facie* válidas y aquél que se opone a su aplicación tiene el peso de la prueba. Sobre este particular, los tribunales federales desarrollaron una serie de criterios en aras de determinar la inaplicabilidad de las cláusulas contractuales de selección de foro en determinados casos. En <u>Unisys v. Ramallo</u>, *supra*, incorporamos tales criterios y resolvimos que las cláusulas de selección de foro no aplicarán en las siguientes circunstancias:

1. Que el foro seleccionado resulta ser irrazonable e injusto.

2. Que de ventilarse el caso en dicho foro se

---

[10] <u>Bremen v. Zapata</u>, *supra*, pág. 10, 15. Énfasis suplido.

incurriría en una clara y patente inequidad, o
sería irrazonable o injusto.

3. Que la cláusula no es válida porque fue
negociada mediando fraude o engaño.

4. Que la implantación de dicha cláusula
derrotaría la política pública del Estado.

Por tanto, la parte que se opone a la aplicación de la
cláusula de selección de foro tiene que demostrar que la
misma resultaría en una de las mencionadas circunstancias.[11]
Ello es así puesto que "la validez y el cumplimiento de los
contratos no puede dejarse al arbitrio de una de las partes
contratantes."[12]

Ahora bien, si la cláusula de selección de foro fue
producto de la negociación entre partes contratantes
sofisticadas, es inevitable concluir que éstas consideraron
las ventajas y desventajas del foro seleccionado, por lo que
no basta alegar que dicho foro es inconveniente para que un
tribunal decrete su inaplicabilidad.[13] A esos efectos, el
Tribunal Supremo de Estados Unidos expresó: "the party
seeking to escape his contract to show that trial in the
contractual forum will be so gravely difficult and
inconvenient that he will for all practical purposes be

---

[11] Véase Bremen v. Zapata, *supra*; Carnival Cruise Lines v.
Shute, 499 U.S. 585 (1991).

[12] Artículo 1208 del Código Civil, 31 L.P.R.A. sec. 3373.

[13] Por no ser necesario para la solución del caso ante de
autos, no nos detendremos a considerar si en otras
circunstancias el inconveniente de litigar en el foro
estipulado es razón suficiente para decretar la
inaplicabilidad de la cláusula de selección de foro.

deprived of his day in court. Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain."[14]

A fin de garantizar la voluntad de las partes contratantes y brindarle estabilidad al comercio internacional y a las relaciones económicas, concluimos que la parte que alegue que el foro seleccionado en el contrato es inconveniente, deberá demostrar que tal inconveniencia es tan grave, que para todos los propósitos prácticos sería privado de su día en corte. De no ser así, no se puede concluir sin más, que el cumplimiento con la cláusula de selección de foro estipulada en el contrato es injusto e irrazonable.

Con estos preceptos en mente, y a la luz del principio de libertad de contratación y de la voluntad de las partes, debemos resolver si la cláusula de selección de foro pactada por dos entes corporativos sofisticados es inaplicable por razón de la doctrina de fraccionamiento de causas de acción.

### III

En el caso de autos, el Tribunal de Apelaciones determinó que por motivo de la doctrina de fraccionamiento de causa de acción es inaplicable la cláusula de selección de foro pactada por Abengoa, S.A. y AIG Europe, toda vez que de esa manera AIICO -filial de AIG Europe- evita el

---

[14] Bremen v. Zapata, *supra*, pág. 18. Énfasis suplido.

inconveniente de litigar las causas de acción bajo el palio del contrato de indemnidad en Sevilla, España.

Amparado en tal razonamiento, AIICO arguye en su extenso alegato que la desestimación de la demanda coparte entablada en contra de Abengoa, S.A. causaría una clara y patente inequidad toda vez que desembocaría en una multiplicidad de pleitos y fraccionaría las causas de acción. Puntualiza, además, que el GCI no contiene una cláusula de selección de foro puesto que la intención de las partes era litigar los asuntos de indemnidad en el lugar donde se construyó la obra. No le asiste la razón.

Adviértase, de entrada, que en Unisys v. Ramallo, *supra*, pautamos que en nuestra jurisdicción existe una fuerte presunción a favor de la validez de las cláusulas de selección de foro.  Por tal razón, la parte que impugna la aplicación de la cláusula de selección de foro tiene que demostrar al menos una de las siguientes circunstancias: (1) que el foro seleccionado es irrazonable e injusto; (2) que de ventilarse el caso en dicho foro se incurriría en una clara y patente inequidad; (3) que la cláusula no es válida porque fue negociada mediante fraude o engaño; o (4) que la implantación de la misma derrotaría la política pública del Estado.

AIICO centra su análisis en el argumento que la desestimación de la demanda coparte en contra de Abengoa, S.A. resultaría en una clara y patente inequidad puesto que lo obligaría a litigar la causa de acción relativa a la

indemnidad en los tribunales españoles. Dicho argumento no es plausible.

En primer lugar, no cabe duda que los contratos de indemnidad otorgados en 1994 y 1999 fueron suscritos por dos entes corporativos sofisticados, Abengoa, S.A. y AIG Europe, que ciertamente consideraron las ventajas y desventajas al momento de seleccionar un foro particular para dilucidar posibles litigios. No empece los posibles inconvenientes que pudiesen surgir al litigar en los tribunales españoles, éstos pactaron voluntariamente que dichos tribunales dilucidarían las controversias que surgieran en virtud del Convenio de 1999. El foro seleccionado por las partes contratantes fue producto su libertad de contratación por lo que su voluntad debe ser respetada toda vez que la cláusula de selección de foro no contraviene las leyes, la moral ni el orden público.

En segundo lugar, AIICO no probó que la desestimación de la demanda coparte instada contra Abengoa, S.A., como resultado de la cláusula de selección de foro, es una clara y patente inequidad. AIICO se ha limitado a argüir en su alegato que el mero hecho de litigar en España la controversia sobre la indemnidad de Abengoa, S.A. es una inequidad. Pero ello no es suficiente. AIICO no ha podido establecer en forma alguna que el litigar en los tribunales españoles es una inequidad.

Es preciso señalar que la desestimación de la demanda coparte incoada en contra de Abengoa, S.A. no es una clara y patente inequidad toda vez que no elimina a ninguna parte o

reclamación indispensable para la controversia original. Asimismo, Abengoa S.A. no niega que AIICO pueda tener derecho a recobrar los gastos procedentes del contrato de indemnidad, lo que argumenta es que tal determinación debe ser adjudicada por los tribunales españoles en Sevilla.

Asimismo, AIICO no demostró que están presentes las restantes circunstancias requeridas para decretar la inaplicabilidad de la cláusula de selección de foro. En primer plano, AIICO no demostró que el foro seleccionado es irrazonable ni injusto. En ningún ápice de su alegato, AIICO logró articular un argumento que demuestre a cabalidad que los tribunales españoles son injustos o irrazonables.

De otra parte, AIICO no ha demostrado que la cláusula de selección de foro es inaplicable por ser producto de fraude o engaño. Surge del expediente que, AIICO admitió la validez de los Convenios de 1994 y 1999, y de la cláusula de selección de foro en ellos estipulada. Además, AIICO no disputa que es miembro del grupo europeo AIG. Sobre estos extremos, es menester señalar que el Tribunal de Apelaciones y el foro primario acogieron como una admisión contra interés que obliga a AIICO, una comunicación de una oficial de la filial neoyorquina de American International Group, Inc., que envió una carta a Abengoa, S.A. en la que informa, en representación de AIICO, que en virtud del Convenio de 1999, Abengoa, S.A. tiene la obligación de rembolsar a AIICO

cualquier suma adjudicada en su contra y a favor de la AEE, como resultado de las fianzas emitidas por su empresa.[15]

Finalmente, al darle plena validez y reconocimiento a la cláusula de selección de foro no derrotamos la política pública del Estado. Todo lo contrario. Al imprimirle plena validez a la cláusula de selección de foro pactada por Abengoa, S.A. y AIG Europe, actuamos conforme a la política pública de no imponerle trabas al comercio interestatal e internacional.

En un intento por soslayar la aplicación de la cláusula de selección de foro, AIICO aduce que la doctrina de cosa juzgada en su modalidad de fraccionamiento de causa de acción hace inaplicable dicha cláusula. Sabido es que la doctrina de cosa juzgada dispone que la sentencia decretada en un pleito anterior impide que en un pleito posterior se litiguen entre las mismas partes y sobre la misma causa de acción y cosas, las cuestiones ya litigadas y adjudicadas, y aquellas que pudieron haber sido litigadas y adjudicadas con propiedad en la acción previa.[16] Ahora bien, la modalidad del fraccionamiento de causa de acción se aplica a toda reclamación posterior entre las mismas partes sobre el mismo asunto.[17]

---

[15] Apéndice del recurso de *Certiorari*, págs. 420-421.

[16] Puerto Rico Wire Products v. C. Crespo, res. 15 de diciembre de 2008, 2008 T.S.P.R. 189.

[17] Zambrana v. Tribunal Superior, 100 D.P.R. 179, 181 (1971).

En el caso ante nos, es forzoso colegir que no aplica la doctrina de fraccionamiento de causa de acción porque de resultar favorecida Abengoa PR en la resolución del pleito, AIICO podrá instar, sin problemas, la demanda relativa a la indemnidad en los tribunales españoles. Concluimos, pues, que en el caso de autos la defensa de cosa juzgada, en su modalidad de fraccionamiento de causa de acción, no derrota ni convierte en inaplicable una cláusula de selección de foro legalmente pactada. Resolver lo contrario le imprimiría incertidumbre a las relaciones contractuales entre compañías multinacionales que hacen negocios en nuestra jurisdicción.

Por tanto, erró el Tribunal de Apelaciones al resolver que la doctrina de fraccionamiento de causa de acción prevalece sobre una cláusula de selección de foro pactada por dos entes corporativos sofisticados.

Finalmente, AIICO aduce en su alegato que el GCI no contiene una cláusula de selección de foro porque la intención de las partes era litigar la controversia sobre la indemnidad en lugar donde se construyó la obra, o sea, en los tribunales de Puerto Rico. Es un principio de derecho arraigado en nuestro ordenamiento que, en apelación nos abstendremos de adjudicar cuestiones no planteadas ante el Tribunal de Primera Instancia.[18] Al examinar el expediente del caso ante nos, notamos que, en efecto, AIICO no levantó tal argumento en el foro primario. Por tal razón, estamos

---

[18] Echandi v. Stewart Title, res. 22 de julio de 2008, 2008 T.S.P.R. 126; Trabal Morales v. Ruíz Rodríguez, 125 D.P.R. 340 (1990); Dorante v. Wrangler of P.R., 145 D.P.R. 408 (1998).

impedidos en etapa de revisión de pasar juicio sobre tal cuestión pues no fue presentada ni atendida por los tribunales inferiores.

No obstante, es preciso puntualizar que el GCI de ninguna manera contradice el Convenio de 1999 toda vez que no contiene disposición dirigida a esos efectos. Además, resulta curioso que dicho documento no contiene fecha, no está notarizado como el Convenio de 1999 y sólo tiene la firma de un oficial de Abengoa, S.A.

En virtud de lo expuesto anteriormente, resolvemos que el Tribunal de Primera Instancia actuó correctamente al desestimar la demanda coparte instada por AIICO en contra de Abengoa, S.A.

IV

Por los fundamentos que anteceden, revocamos en su totalidad la sentencia emitida por el Tribunal de Apelaciones. En consecuencia, se reinstala la sentencia parcial emitida por el Tribunal de Primera Instancia, Sala de San Juan.

Efraín E. Rivera Pérez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

ABENGOA PUERTO RICO, S.E.,
    Demandante Reconvenida

        v

Autoridad Energía Eléctrica
    Demandada Reconveniente

        v

ABENGOA, S.A.,                          CC-2008-396

        Tercera Demandada
    Reconveniente y Demandada
            Coparte
         Peticionaria

AMERICAN          INTERNATIONAL
INSURANCE CO. OF PUERTO RICO,
Tercera Demandada, Demandante
contra Coparte
        Recurrida

UNIPRO,     S.E.,     INDUCHEM
ENVIRONMENTAL SERVICES, INC. Y
PASSCO, INC.
        Interventores


SENTENCIA

San Juan, Puerto Rico, a 14 de agosto de 2009.

    Por los fundamentos antes expuestos revocamos en su totalidad la sentencia emitida por el Tribunal de Apelaciones. En consecuencia, se reinstala la sentencia parcial emitida por el Tribunal de Primera Instancia, Sala de San Juan.

    Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodriguez Rodríguez emite Opinión concurrente. La Jueza Asociada señora Fiol Matta no intervino. La Jueza Asociada señora Pabón Charneco no interviene.


                    Aida Ileana Oquendo Graulau
                Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Abengoa Puerto Rico, S.E.<br>  Demandante Reconvenida<br><br>       v.<br><br>Autoridad    de    Energía<br>Eléctrica<br>  Demandada Reconviniente<br><br>       v.<br><br>Abengoa, S.A.<br>  Tercera        Demandada<br>  Reconviniente y Demandada<br>  Coparte<br>    Peticionaria<br><br>American       International<br>Insurance Co. of Puerto Rico,<br>  Tercera Demandada,<br>  Demandante contra Coparte y<br>    Recurrida<br><br>UNIPRO,    S.E.    Induchem<br>Environmental Services, Inc.<br>y Passco, Inc.<br>      Interventores | CC-2008-396 |

Opinión concurrente emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 14 de agosto de 2009

Estoy de acuerdo con la conclusión a que llega el Tribunal en el día de hoy. Concurro por estimar que la doctrina de fraccionamiento de causa es de todo punto inaplicable en este caso. Ello, toda vez que una vez se desestime una reclamación instada en virtud de la cláusula de selección de foro, no podría invocarse el fraccionamiento de causas pues la referida cláusula constituyó un impedimento para litigar y adjudicar la reclamación en el pleito precedente. Es decir, que la reclamación no era susceptible de adjudicarse en el pleito

anterior. Ahora bien, cabe destacar que el Estado sí tiene un interés en la economía procesal y en que las reclamaciones relacionadas a unos mismos hechos se litiguen conjuntamente. En este caso en particular, no obstante, ese interés no es óbice para que se desestime la demanda de coparte.

Sobre *Unisys v. Ramallo*, 128 DPR 842 (1991), mencionado en la Opinión del Tribunal, considero necesario indicar, por ser éste el caso normativo en nuestra jurisdicción sobre las cláusulas de selección de foro, que este caso es claramente distinguible del de autos. En *Unisys,* rechazamos aplicar una cláusula de selección de foro pactada entre la parte demandada y la parte tercera demandada al determinar que esta última era una parte indispensable en la etapa de los procedimientos en que se encontraba el pleito. Así, si se desestimaba la demanda contra tercero, en esa etapa procesal, no se hubiese podido adjudicar la demanda original, lo que a su vez hubiese afectado los derechos de la parte demandante quien no pactó la cláusula de selección de foro. Por el contrario, en el presente caso no se trata de eliminar a una parte indispensable del pleito, sino de desestimar una demanda contra coparte que se relaciona al pleito original, pero cuya adjudicación no es indispensable para disponer de las demás reclamaciones pendientes.

Finalmente, discrepo de la aseveración del Tribunal en nota al calce número 13, toda vez que entiendo que lo allí

expresado es inconsistente con lo resuelto en *Unisys, ante,* así como con lo indicado en la propia ponencia mayoritaria.

Por los fundamentos que anteceden, concurro con la Opinión del Tribunal.


                                        Anabelle Rodríguez Rodríguez
                                              Juez Asociada